UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE K.,[1] | ) |
| | ) No. 19 CV 1239 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| | ) |
| | ) May 29, 2020 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Nicole K. ("Nicole") seeks supplemental security income ("SSI") based on her claim that the combination of bipolar, PTSD, major depression, schizophrenia, low back pain, and arthritis in the neck prevents her from being able to perform full-time work. Before the court are the parties' cross-motions for summary judgment. For the following reasons, Nicole's motion is granted, and the government's is denied:

**Procedural History**

Nicole filed her SSI application in March 2016 alleging a disability onset date of September 15, 2014. (Administrative Record ("A.R.") 185-90.) After her application was denied initially and upon reconsideration, (id. at 74, 105), Nicole sought and was granted a hearing before an administrative law judge ("ALJ"), (id. at 122-39). A hearing took place in January 2018 at which Nicole and a vocational

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

expert ("VE") provided testimony. (Id. at 34-73.) Thereafter, the ALJ issued a decision in March 2018 concluding that Nicole was not disabled. (Id. at 15-28.) When the Appeals Council denied Nicole's request for review, (id. at 1-6), the ALJ's denial of benefits became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Nicole timely filed this lawsuit seeking judicial review of the Commissioner's final decision and the parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 10).

## The ALJ's Decision

The ALJ followed the required five-step process in evaluating Nicole's disability claim. *See* 20 C.F.R. § 404.5120(a). At step one the ALJ found that Nicole had not engaged in substantial gainful activity since her alleged disability onset date. (A.R. 17.) At step two the ALJ concluded that Nicole suffers from the following severe impairments: major depressive disorder/bipolar disorder, personality disorder, anxiety disorder, and panic disorder. (Id.) At step three the ALJ determined that Nicole's impairments do not meet or medically equal any listed impairment. (Id. at 18.) However, the ALJ found that Nicole's mental impairments cause moderate limitations in her ability to concentrate, persist, or maintain pace. (Id. at 19.)

Before turning to step four, the ALJ determined that Nicole has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations. (Id.) Specifically, the ALJ assessed Nicole as having the capacity to perform simple and routine tasks, to interact with

2

co-workers occasionally but not on joint tasks, and to have superficial contact with the public. (Id. at 19-20.) In the RFC assessment, the ALJ afforded "great weight" to the opinions of the reviewing state agency doctor and psychologist who at the initial and reconsideration levels found that Nicole's mental impairments cause moderate limitations in her ability to concentrate, persist, or maintain pace. (Id. at 22-23.) The ALJ also assigned "partial weight" to the opinion of Nicole's treating psychiatrist who found that Nicole has marked difficulties in this functional area. (Id. at 23.) The ALJ then found at step four that Nicole has no past relevant work. (Id. at 26.) At step five, the ALJ relied on the VE's hearing testimony and concluded that there are jobs that exist in significant numbers in the national economy that Nicole can perform. (Id. at 26-27.)

## Analysis

Nicole argues that the ALJ's RFC assessment is flawed because the ALJ failed to: (1) account for her moderate limitations in concentration, persistence, or pace ("CPP"); (2) give controlling weight to the opinion of her treating psychiatrist; (3) include or otherwise address the more restrictive limitations from the reviewing state agency doctor whose opinion he gave "great weight"; or (4) conduct a proper symptom assessment.[2] This court reviews the ALJ's decision to ensure that it is supported by substantial evidence, meaning "more than a mere scintilla" but no more than "such relevant evidence as a reasonable mind might accept as adequate

---

[2] Nicole's submissions appear to violate Local Rule 5.2(c), which requires that documents submitted to the court have a line spacing of at least 2.0. The line spacing in Nicole's submissions appear to be 1.5. If this is accurate, Nicole's counsel is directed to remedy this oversight moving forward.

3

to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations and citations omitted). To adequately support a decision, the ALJ must build an "accurate and logical bridge" from the evidence to his conclusion that the claimant is not disabled. *Scott v. Astrue*, 674 F.3d 734, 740 (7th Cir. 2011). The court's role is not to decide the facts, reweigh the evidence, or to substitute its judgment for that of the ALJ. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). That said, if the ALJ committed an error of law or "based the decision on serious factual mistakes or omissions," reversal is required. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

A.  **Symptom Assessment**

The court begins its analysis with Nicole's challenge to the ALJ's symptom assessment, because that assessment informs several aspects of the ALJ's decision, including the RFC analysis. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (noting that an erroneous credibility determination requires remand unless the remainder of the ALJ's decision does not depend on it). According to Nicole, the ALJ's evaluation of her sister's statements in the third-party function report and her own subjective symptoms contain "troubling errors of material fact and ignores context in the record." (R. 17, Pl.'s Mem. at 14.) These errors, she argues, undermine his conclusion that she is not disabled. (R. 24, Pl.'s Reply at 7.) The court gives an ALJ's symptom assessment "special deference," overturning that decision only if it is "patently wrong." *Summers v. Berryhill*, 684 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted). Nevertheless, an ALJ's "failure to

4

adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

For its part, the government begins its subjective symptom argument by essentially conceding that the ALJ offered a couple of questionable reasons for discounting Nicole's allegations. (R. 23, Govt.'s Mem. at 12.) For example, the ALJ discredited Nicole's sister's statements based, in part, on the fact that record evidence does not support her assertion that Nicole needs a wheelchair and that she did not discuss Nicole's prior alcohol and drug use. (A.R. 24.) In citing these reasons, the ALJ overlooked the fact that Nicole's sister completed her report in October 2016 just weeks after Nicole broke her left ankle, (id. at 274; see also id. at 436-44 (ER records from July 2016)), and over a year into Nicole's sobriety, (id. at 468 (noting that Nicole completed inpatient treatment, attended alcoholics anonymous meetings, and last used drugs in March 2015)). Thus, the record does not support the ALJ's reasons here.

Similarly, the ALJ discredited Nicole's testimony that she is afraid of people and of leaving her house based on the fact that she said that she has cheated on her boyfriend, which, according to the ALJ, "presumably required her to leave her house," gone to the store a block from her home six months prior to the hearing, and goes to doctor's appointments by herself. (Id. at 25.) Here again the ALJ's reasons are not supported by the record. When the ALJ asked Nicole if she went out to meet her other friend she answered, "No," but explained that he came to her house.

5

(Id. at 65.) Nicole also testified that she usually does not go anywhere by herself and that her mother accompanies her to the store monthly. (Id. at 46, 49.) Indeed, her mother was present at the hearing in January 2018. (Id. at 53.) And, while it is true that Nicole testified that she attends her monthly doctors visits alone, (id. at 52-53), the Seventh Circuit has cautioned against over-emphasizing an activity like this, *see Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). In short, there are critical differences between taking a single solo trip to the local store and traveling unaccompanied to doctor's appointments once a month and performing a full-time job. *Id.*

Despite these errors, the government argues, citing *McKinzey v. Astrue*, 641 F.3d 884 (7th Cir. 2011), that even if part of the ALJ's subjective symptom assessment is faulty, the court must still uphold the assessment if the ALJ provides other reasons that are adequately supported by the record. (R. 23, Govt.'s Mem. at 12.) To this end, the government insists that substantial evidence supports the other aspects of the ALJ's assessment that Nicole takes issue with, such as the fact that she was drinking alcohol and using drugs when she left her job in 2014 and did not submit records documenting visits with a counselor. (R. 17, Pl.'s Mem. at 14-15.) The court does not agree. While the ALJ was entitled to consider the impact that Nicole's alcohol and drug use had on her leaving her job, and further reasonably concluded that Nicole's testimony that she talked to a counselor is not supported by the record, (A.R. 24); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017), these glimmers of sound rationale are

6

overshadowed by the ALJ's other errors, including those discussed in the rest of this opinion. Moreover, unlike in *McKinzey*, where two of the ALJ's erroneous explanations were excused because of the "smoking gun" that the claimant's own doctor found she was exaggerating her symptoms, *see McKinzey*, 641 F.3d at 891, in this case there is no such evidence. Rather, the cumulative effect of the errors described herein leaves the court without confidence that the ALJ's decision builds a logical bridge between the evidence and his conclusions. *Scott*, 674 F.3d at 740. Accordingly, the ALJ must perform a new symptom assessment on remand.

**B.    CPP**

Turning to Nicole's opening argument, that the ALJ failed to account for her moderate limitations in CPP, it is well-settled that "both the hypothetical [question] posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *See Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019). "This includes any deficiencies the claimant may have in" CPP. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The Seventh Circuit has said that "in most cases 'employing terms like simple, repetitive tasks on their own'" is not enough to account for a claimant's limitations in this functional area. *Winsted*, 923 F.3d at 477 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)). This is because "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including . . . over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

7

At the hearing the ALJ posed three hypothetical questions to the VE. The first two focused on whether work was available for a person limited to simple, routine tasks with certain interaction restrictions. (A.R. 67-68.) The VE testified that this person could work as a hospital cleaner, store laborer, or hand packager. (Id.) The third hypothetical added being off task 15 percent or more of the workday and/or being absent from work two or more days per month. (Id. at 68.) The VE testified that in either case no jobs would be available. (Id.) For the RFC, the ALJ adopted the limitations he proposed in his second hypothetical question to the VE, including that Nicole can perform only "simple and routine tasks," "can occasionally interact with co-workers but should not work on joint tasks with them," and "can only superficially have contact with the public." (Compare id. at 19-20 (ALJ's mental RFC) with id. at 68 (ALJ's second hypothetical question to the VE).)

Nicole argues that the ALJ's restriction to "simple and routine tasks" does not account for her moderate limitations in CPP. (R. 17, Pl.'s Mem. at 10.) She cites *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), for the proposition that "restrictions to simple, repetitive tasks do not account for significant problems in" CPP. (Id.) According to Nicole, had the ALJ incorporated into the RFC the 15 percent off-task limitation that he proposed in his third hypothetical, that limitation would have addressed her CPP deficits. (Id.) The government in turn argues that Nicole's reading of *O'Connor-Spinner* is "far too broad," because in a recent string of cases, including *Jozefyk*, the Seventh Circuit has affirmed similar decisions of the Commissioner where the claimant had moderate CPP difficulties

8

and was limited to "simple, routine, repetitive tasks." (R. 23, Govt.'s Mem. at 3 (discussing *Jozefyk*, 923 F.3d at 494-95, 498 and citing *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), and *Dudley v. Berryhill*, 773 Fed. Appx. 838, 842 (7th Cir. 2019)).) The government further argues that the ALJ accounted for Nicole's moderate CPP difficulties by relying on the opinion of the reviewing state agency psychologist and was not required to address in the RFC off-task limitations he did not find were present. (Id. at 3-6.)

The court agrees with the government that *O'Connor-Spinner* does not impose a blanket rule that a restriction to "simple, repetitive tasks" in a hypothetical question to the VE or the RFC is never an accurate reflection of moderate CPP limitations. As illustrated by *Jozefyk* and the other cases the government cites, the Seventh Circuit employs a case-by-case analysis and has upheld an RFC's limitation to simple, routine, and repetitive tasks for claimants with CPP deficits when the record demonstrates that the RFC adequately captures their mental limitations. *Jozefyk*, 923 F.3d at 495, 497-98 (finding sufficient RFC limiting claimant to "simple, routine, repetitive tasks" requiring limited-to-no social interaction where claimant's impairments surfaced only in social settings); *see also Burmester*, 920 F.3d at 510 (restricting claimant to "simple, routine, repetitive tasks requiring only simple work related decisions with few changes in the routine work setting" sufficient where ALJ credited opinion of examining consultant "that maintaining concentration and attention [for claimant] should be manageable"); *Dudley*, 773 Fed. Appx. at 842 (holding limitation to "simple, routine and repetitive

9

tasks" and "work requiring the exercise of only simple judgment" accommodated claimant's stress- and panic- related impairments and concentration difficulties).

To this end, the government insists that the RFC here adequately accounts for Nicole's moderate CPP limitations because the ALJ gave "great weight" to the opinion of the reviewing state agency psychologist, Dr. Kiela Bolden. (R. 23, Govt.'s Mem. at 4.) Dr. Bolden reviewed Nicole's records at the reconsideration level and found that she has moderate CPP limitations but that she retains the mental RFC "to understand, remember, and carry out simple instructions" and "to carry out simple tasks with adequate" CPP. (A.R 98, 101-02.) She also found that Nicole "is able to deal with co-workers and the public on a limited basis" and that her "ability to handle stress and pressure in the work place would be reduced but adequate to handle the stresses of routine work." (Id. at 102.) The government contends that the ALJ was entitled to rely on this opinion in accommodating Nicole's moderate CPP limitations. (R. 23, Govt.'s Mem. at 4 (citing *Burmester*, 920 F.3d at 511 ("[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination.")).)

The government's argument is unavailing for several reasons. First, as Nicole correctly points out, *Burmester* is distinguishable. In that case, the ALJ gave great weight to the opinion of a state agency psychologist who personally observed and examined the claimant before rendering his opinion. *See Burmester*, No. 15 CV 1392, 2018 WL 1378760, at *11 (E.D. Wis. March 19, 2018), *aff'd*, 920 F.3d 507. In contrast, the ALJ here gave great weight to the opinion of a state agency

10

psychologist who only reviewed the record upon reconsideration. Moreover, in *Burmester* there "was no other finding in the report that [the claimant] was unable to concentrate on work," 920 F.3d at 511, whereas here the record includes additional evidence of Nicole's CPP difficulties. Most notably, Nicole's treating psychiatrist, Dr. Morris Blount, opined in December 2017—more than a year after Dr. Bolden issued her opinion—that Nicole has greater CPP limitations than the limitations ALJ assessed in the RFC. (A.R. at 684-87; see also id. at 102 (Dr. Bolden's mental RFC dated October 18, 2016).) Therefore, unlike in *Burmester*, the court cannot say that the ALJ accounted for Nicole's moderate CPP limitations by relying on Dr. Bolden's opinion.

Additionally, the government neglects to mention that the ALJ also gave "great weight" to the opinion of the state agency doctor, Dr. Russel Taylor, who reviewed Nicole's records at the initial level. Both reviewers found moderate CPP limitations, but Dr. Taylor's mental RFC differed from Dr. Bolden's in several significant respects. (Compare id. at 86 with id. at 101-02.) For example, Dr. Taylor found that Nicole retains the mental RFC "to understand, remember[,] and concentrate sufficiently in order to carry out one and two-step instructions/tasks," (id. at 86), whereas Dr. Bolden's mental RFC is devoid of any step restrictions. The ALJ did not address this and other differences in their opinions and instead gave "great weight" to both. Elsewhere in its brief, the government points out that the ALJ is not required to adopt the opinions of either of these reviewers simply because he gave them great weight. (See R. 23, Govt.'s

11

Mem. at 11.) This may be true, but the ALJ must build an "accurate and logical bridge" from the evidence to his conclusion. *Scott*, 674 F.3d at 740. He did not do so in this respect and thus substantial evidence is lacking.

But even if, as the government asserts, the ALJ reasonably relied on Dr. Bolden's opinion, he "still must adequately account for [Nicole's] CPP limitations identified elsewhere in the record," including those identified by Nicole's treating psychiatrist, Dr. Blount, whose opinion the ALJ found credible. *DeCamp v. Berryhill*, 916 F.3d 671, 676, 676 (7th Cir. 2019); *Yurt*, 758 F.3d at 858. Indeed, the ALJ found that Dr. Blount's December 2017 opinion "partially supports moderate limitations in [CPP] consistent with the objective medical findings, including [Nicole's] difficulty with recall during the consultative examination and her complaints of understanding, memory, and sustained concentration and persistence limitations." (A.R. 23; see also id. at 526-29 (June 2016 psychiatric consultative examination report).) Dr. Bolden's conclusion that Nicole can handle "simple tasks" and "routine work," and the ALJ's limitation reflecting the same, do not give the VE any basis to evaluate the issues Dr. Blount has identified. *See Yurt*, 758 F.3d at 859 ("[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in [CPP]."). On remand, the ALJ must adequately consider evidence of Nicole's moderate CPP difficulties and build the requisite "logical bridge" between the evidence and the RFC finding.

12

### C.     Medical Opinions

Nicole's remaining challenges to the RFC finding concern the ALJ's treatment of the three medical opinions in the record. Although on remand the ALJ's reevaluation of the symptom assessment and Nicole's moderate CPP limitations will necessitate revaluation of the medical opinion evidence, for completeness the court will briefly address her arguments. Specifically, Nicole argues that the ALJ should have given controlling weight to Dr. Blount's opinion as he is her treating psychiatrist. (R. 17, Pl.'s Mem. at 11.) She also argues that the ALJ should have addressed the more restrictive limitations from the reviewing state agency doctors. (Id. at 13-14.)

Beginning with Dr. Blount's opinion, under the treating physician rule an ALJ must give controlling weight to a treating physician's opinion if it is: "(1) supported by medical findings; and (2) consistent with substantial evidence in the record."[3] *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). If the ALJ concludes that a treating physician's opinion is not entitled to controlling weight, he must give "good reasons" for discounting the opinion, after considering factors such as the nature of the treatment relationship, the frequency of examination, the physician's specialty, the type of tests performed, and the reliability of the opinion. *See* 20 C.F.R. § 416.927(c); *see also Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016).

---

[3] The Social Security Administration adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 58844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. (Id.)

13

As already mentioned, Dr. Blount issued his opinion regarding Nicole's mental functioning in December 2017, and his opinion supports a finding that Nicole is disabled. (See A.R. 684-87.) The ALJ, however, gave Dr. Blount's opinion only "partial weight" and instead relied primarily on the opinions of the reviewing state agency doctor and psychologist, Drs. Taylor and Bolden. (Id. at 22-23.) The ALJ believed the psychiatrist's treatment relationship with Nicole was "quite brief." (Id. at 23.) The ALJ also believed Dr. Blount's opinion to be contradicted by the fact that Nicole "has a boyfriend, spends time with her children, and lives with her mother." (Id.) He further found Dr. Blount's opinion unsupported by his own treatment notes and other medical evidence. (Id.) Finally, the ALJ noted that "there is nothing in the record to suggest that [Nicole] had multiple episodes of decompensation or that she would need time off from work," considering her "routine and conservative treatment," "partial improvement with medication," and "unremarkable mental status examinations." (Id.)

The court agrees with Nicole that at least some of the ALJ's reasons for discounting the moderate-to-marked limitations assessed by Dr. Blount are not supported by the record. The ALJ's characterization of the treatment relationships as "quite brief," for example, is inaccurate because Dr. Blount saw Nicole at least eight times over a one-year period—prescribing and adjusting her medications to treat mental limitations that the ALJ deemed severe—before he issued his opinion of her mental functioning in December 2017. (Id. at 664-65, 669-71, 675, 677, 679, 681, 684-87.) And, Nicole testified at the January 2018 hearing that she is still

14

seeing Dr. Blount for follow-up care. (Id. at 59.) A doctor who treats a patient routinely over the course of a year has a treatment relationship sufficiently long and frequent "enough [for him] to have obtained a longitudinal picture of [her] impairment." 20 C.F.R. § 404.1527(c)(2)(i). Generally, an opinion from this type of treating source is entitled to more weight than an opinion from a non-treating source. *Id.*

Additionally, the ALJ misstated Nicole's testimony about her social interactions. Contrary to the ALJ's understanding, Nicole does not live with her mother. (A.R. 23, 25.) Nicole testified repeatedly that she lives alone, (id. at 41, 46, 63), and numerous documents in the record note the same, (see, e.g., id. at 202 (November 2015 functional report), 223 (March 2016 functional report), 256 (August 2016 functional report), 521 (May 2016 consultative examination report), 526 (June 2016 consultative examination report), 661 (Dr. Blount's December 2016 initial psychiatrist evaluation report)). Elsewhere in his decision the ALJ states that Nicole's boyfriend lives with her, but Nicole testified that he does not. (Compare id. at 20 (ALJ summarizing Nicole's testimony as "she has a boyfriend who does live with her") with id. at 46 (Nicole answering, "No," when asked by the ALJ if her boyfriend lives with her)). Thus, the ALJ improperly relied on Nicole's alleged ability to live with her mother and boyfriend in evaluating Dr. Blount's assessment of her capacity for social interactions.

Moreover, while the ALJ correctly noted that the two most recent treatment notes from Dr. Blount indicated that Nicole's mood was "okay," her affect was

15

"pleasant," she was no longer hallucinating, and she was responding to medications, (id. at 679, 681 (treatment notes dated September 12 and October 10, 2017, respectively)), the Seventh Circuit has cautioned that a person suffering from bipolar disorder and major depressive disorder is likely to have symptoms that "wax and wane." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."). Dr. Blount's other treatment notes cited by the ALJ underscore this point. (See, e.g., A.R. 671 (in April 2017, mood "ehh" and affect slightly concerned), 675 (in July 2017, mood "not good" and affect slightly elevated), 677 (later in July 2017, mood "okay" and affect contemplative).) The court therefore concludes that the recent treatment records do not provide a sound basis for according less weight to Dr. Blount's opinion.

Above all else, the ALJ's decision to afford less weight to Dr. Blount's opinion is troubling because he is the only treating source to give an opinion concerning Nicole's mental functioning. Moreover, his opinion is the most recent and current in the record and, as Nicole points out, his treating relationship is the longest and most consistent that she has had with any mental health provider. (See R. 17, Pl.'s Mem. at 11.) As previously mentioned, the reviewing state agency doctor and psychologist, whose opinions the ALJ afforded "great weight," did not have the benefit of considering either Dr. Blount's treatment notes or his December 2017 opinion. The ALJ's decision to give short shrift to Dr. Blount's opinion is further

16

compounded by the ALJ's disregard for the opinion of the VE that a person with Nicole's limitations who needs to be off-task 15 percent of the time or absent from work three days per month is not employable. *See Crump*, 932 F.3d at 571 (finding ALJ's decision to discount opinion of claimant's treating psychiatrist "when combined with the ALJ's disregard for the highly relevant opinion of the VE" led to deficient RFC).

Nicole also contends, and this court agrees, that the ALJ failed to reconcile Dr. Taylor's mental RFC assessment limiting Nicole to "one and two-step instructions/tasks" and excluding "work with the public on a sustained basis" with his own mental RFC assessment that Nicole "can perform simple and routine tasks" and "can only superficially have contact with the public." (Compare A.R. 86 with id. at 19-20.) Further, the ALJ failed to acknowledge critical differences between Drs. Taylor's and Bolden's mental RFC assessments. Instead, he quoted from the text of their respective assessments and purported to give them equal weight as if they are the same. (Id. at 22.) In fact, the government's earlier suggestion that the ALJ relied on only Dr. Bolden's opinion in accommodating Nicole's difficulties in CPP underscores the notion that their opinions differ in some respects. (See R. 23, Govt.'s Mem. at 4.) Therefore, the court does not agree with the government that it is "splitting hairs" to insist that the ALJ explain his reasoning here. (Id. at 11-12.)

The court is mindful of the need to give substantial deference to an ALJ's determination on what weight to assign medical opinions, *see Pepper*, 712 F.3d at 362 (the court may not substitute its judgment for the ALJ's), but the gaps in the

17

ALJ's reasoning and problems with the RFC finding show that he failed to properly balance the medical opinions.

## Conclusion

For the foregoing reasons, Nicole's motion is granted, and the government's motion is denied.

ENTER:

_____
**Young B. Kim**
**United States Magistrate Judge**

18